ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| PR RECOVERY AND DEVELOPMENT JV, LLC.<br><br>Apelado<br><br>v.<br><br>REBECA I. CARRASQUILLO DE JESÚS T/C/C REBECA ISIS CARRASQUILLO DE JESÚS H/N/C CITRUS CAFÉ<br><br>Apelante | KLAN202300260 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Civil Núm.: CA2021CV03193<br><br>Sobre: Cobro de Dinero, Ejecución de Hipoteca y Ejecución de Gravamen Mobiliario |

Panel integrado por su presidente, el Juez Figueroa Cabán, la Jueza Grana Martínez y el Juez Rodríguez Flores

**Figueroa Cabán, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico a 30 de junio de 2023.

Comparece la señora Rebecca I. Carrasquillo De Jesús, en adelante la Sra. Carrasquillo o la apelante, quien nos solicita revoquemos la *Sentencia Sumaria* dictada el 25 de enero de 2023. Mediante la misma, el Tribunal de Primera Instancia, Sala de Carolina, en adelante TPI, declaró Con Lugar la demanda por cobro de dinero, ejecución de hipoteca y ejecución de gravamen mobiliario presentada por PR Recovery and Development, en adelante PRRD o apelada.

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada.

**-I-**

Según surge del expediente ante nos, PRRD presentó una demanda por cobro de dinero, ejecución de hipoteca y ejecución de gravamen mobiliario en contra de la Sra. Carrasquillo.[1]

_____
[1] Apéndice de la apelada, págs. 1-96.

Número Identificador
SEN2023_____

Posteriormente, la Sra. Carrasquillo presentó su *Contestación a la Demanda de Ejecución de Sentencia*, en la cual sostuvo que la apelada no ostenta legitimación activa ni madurez para cobrar la acreencia y que el Banco de Desarrollo Económico, en adelante BDE, estaba impedido de cederle el préstamo objeto del litigio a PRRD.[2]

Así las cosas, PRRD presentó una *Solicitud de Sentencia Sumaria*.[3] Adujo que es el acreedor legítimo de la Sra. Carrasquillo y, por no haber controversia sobre los hechos materiales del caso de autos, tampoco existía impedimento para que el BDE le cediera el préstamo objeto del litigio.[4]

Por su parte, la apelante presentó una *Oposición Jurada a Moción de Sentencia Sumaria*.[5] En esta reafirmó los planteamientos esbozados en su *Contestación a la Demanda de Ejecución de Sentencia*. En esencia, sostuvo que la sentencia sumaria era improcedente porque existe controversia sobre la legitimación activa de PRRD para cobrar la acreencia reclamada.[6] Del mismo modo, alegó que el pleito no está maduro hasta tanto no se resuelva el pleito del BDE, en virtud del cual se impugna la validez del contrato de cesión entre aquel y PRRD, así como un pleito federal, en el que se está dilucidando la obligación de la Junta de Control Fiscal de revisar el contrato en controversia.[7]

En desacuerdo, PRRD presentó una *Réplica a Oposición Jurada a Solicitud de Sentencia Sumaria* en la cual manifestó que la Oposición incumplió con la Regla

---

[2] *Id.*, pág. 567.
[3] *Id.*, págs. 1-116.
[4] *Id.*, págs. 567-568.
[5] *Id.*, págs. 117-250.
[6] *Id.*, pág. 568.
[7] *Id.*

36 de Procedimiento Civil, en la medida en que no incluyó una relación concisa con referencia a los párrafos enumerados por PRRD, de los hechos esenciales y pertinentes controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, y tampoco sustentó sus hechos alegados ni argumentos levantados con declaraciones juradas u otra prueba admisible.[8] Además, arguyó que la *Ley de Transacciones Comerciales* lo legitima como tenedor de los pagarés, por lo que tiene derecho a exigir el cumplimiento de la obligación que reclama.[9] En última instancia, enfatizó que la determinación de los pleitos legales relacionados con el contrato de transferencia de préstamos comerciales entre el BDE y PRRD, no afectan la condición de deudora de la apelante.[10]

Tras evaluar los escritos de las partes y los documentos que obran en el expediente, el TPI declaró Ha Lugar la demanda presentada por PRRD,[11] posterior a determinar que no existe controversia sobre ninguno de los hechos materiales listados a continuación:

1. El 24 de julio de 2014, el BDE y la Parte Demandada suscribieron una Carta Compromiso.

2. El 3 de octubre de 2014 el BDE y la Parte Demandada otorgaron un contrato de Préstamo (en lo sucesivo, el "Contrato de Préstamo"), autenticado ante el Notario Público Frank M. González Acevedo bajo el afidávit número 139,633, mediante el cual se concedió a la Demandada un préstamo comercial por la suma de $142,068.00.

3. El Contrato de Préstamo está evidenciado por un Pagaré emitido el 3 de octubre de 2014 por la Demandada, a favor del BDE, o a su orden, debidamente endosado a favor de PRRD, por la suma principal de $142,068.00, acumulando intereses a una tasa variable del 2% sobre la

---

[8] *Id.*, págs. 251-564.
[9] *Id.*
[10] *Id.*, págs. 568-569.
[11] *Id.*, págs. 610-611.

tasa de interés preferente, prevaleciente de tiempo en tiempo determinada por el Citibank, N.A., con un vencimiento al 5 de octubre de 2034, autenticado bajo el afidávit número 139,638 ante el Notario Público Frank M. González Acevedo (en lo sucesivo, el "Pagaré Operacional").

4. El Contrato de Préstamo fue enmendado el 25 de septiembre de 2015 mediante un Acuerdo Sobre Plan de Pago Especial (en lo sucesivo, la "Enmienda I") suscrito por el BDE y la Demandada, autenticado bajo el afidávit número 5,612 ante el Notario Público Hernán E. Jorge Rosado, mediante el cual, entre otros: (i) reconoció y aceptó adeudar a dicha fecha la suma de $122,894.76 por concepto de principal; (ii) se realizó un plan de pagos especial; (iii) se extendió el vencimiento al 5 de septiembre de 2045; y (iv) se fijó la tasa de interés a 5.50%.

5. La Enmienda I está evidenciada por un *Allonge* emitido el 25 de septiembre de 2015 por el BDE y la Demandada.

6. PRRD es el tenedor físico del Pagaré Operacional, según enmendado, el cual está debidamente endosado a favor de PRRD.

**La Colateral Hipotecaria**

7. Como colateral para asegurar el pago y cumplimiento puntual de sus obligaciones bajo el Contrato de Préstamo y toda obligación presente y futura de la Demandada para con el BDE, ahora PRRD, la Parte Demandada entregó al BDE, ahora PRRD, en carácter prendatario el siguiente pagaré hipotecario, el cual está en posesión de PRRD, en virtud de un Contrato de Prenda otorgado el 3 de octubre de 2014, autenticado mediante el afidávit número 139,634 del Notario Público Frank M. González Acevedo (en adelante, el "Contrato de Prenda"):

i. Pagaré hipotecario emitido el 3 de octubre de 2014, por la Demandada a favor del BDE, o a su orden, debidamente endosado a favor de PRRD, por la suma principal de $135,000.00, autenticado bajo el afidávit número 139,632 del Notario Público Frank M. González Acevedo (en lo sucesivo, el "Pagaré Hipotecario"). El Pagaré Hipotecario está garantizado por hipoteca constituida mediante la Escritura Número 30 de Hipoteca en Primer Rango Garantía de Pagaré, otorgada en San Juan, Puerto Rico, el 3 de octubre de 2014, ante el Notario Público Frank M. González Acevedo, la cual consta inscrita al folio 21 del tomo 1041 de Carolina Norte, finca número 14,652, Registro de la Propiedad, Primera Sección de Carolina (en lo sucesivo, la "Hipoteca").

8. La Hipoteca I que garantiza el Pagaré Hipotecario grava la siguiente propiedad, cuyo titular registral es la Demandada:

i. URBANA: Local número 103 localizado en el piso número uno del Condominio Verde Mar en Isla Verde, Puerto Rico. Tiene una cabida superficial de 750.00 pies cuadrados. Este solar está radicado a la izquierda del edificio. Colinda por el SUR, 25.00 pies con la pared divisoria principal del edificio por donde tiene puerta principal. Este local colinda por el NORTE con la pared medianera que los separa del estacionamiento local uno, dos y tres; por el OESTE en 30.00 pies con el área del patio común del edificio. Por el ESTE, con 30.00 pies por la pared medianera que los separa de la escalera de acceso a la segunda planta del edificio. Consta este local de espacio para comercio y forma parte integral del local antes descrito, los locales uno, dos y tres[.]

Finca número 14,652, inscrita al folio 16 del tomo 384 de Carolina Norte, Registro de la Propiedad de Puerto Rico, Sección I de Carolina (en lo sucesivo, la "Propiedad").

9. El gravamen sobre el Pagaré Hipotecario quedó debidamente perfeccionado al haberse entregado al acreedor hipotecario la posesión del Pagaré Hipotecario cuyo tenedor, físicamente y por endoso, al presente es PRRD.

**Colateral Adicional**

10. Como colateral para asegurar el pago y cumplimiento puntual de sus obligaciones bajo el Contrato de Préstamo, el 3 de octubre de 2013, el BDE, ahora PRRD, y la Demandada suscribieron un Acuerdo de Gravamen Mobiliario (en los[sic] sucesivo, el "Gravamen Mobiliario"), autenticado bajo el afidávit número 139,635 del Notario Público Frank M. González Acevedo, mediante el cual, entre otras cosas, la Demandada transfirió, cedió, otorgó y/o pignoró a favor de BDE, ahora PRRD, todo derecho, título y/o interés sobre todo el equipo y maquinaria, inventario y las cuentas por cobrar, presentes o futuras, y el producto de cualesquiera de ellos, incluyendo sin limitarse al equipo a ser adquirido por la Demandada.

11. El Gravamen Mobiliario quedó debidamente perfeccionado mediante la radicación de una declaración de financiamiento número 2014005460 en el Departamento de Estado de Puerto Rico (en lo sucesivo, la "Declaración de Financiamiento").

12. La Declaración de Financiamiento fue enmendada el 4 de marzo de 2019 (en adelante, la "Enmienda I a la Declaración de Financiamiento").

13. La Declaración de Financiamiento fue enmendada el 20 de agosto de 2019 (en adelante, la "Enmienda II a la Declaración de Financiamiento").

**La Garantía Continua e Ilimitada**

14. El 3 de octubre de 2014, la Demandada otorgó una Garantía Continua e Ilimitada, autenticada bajo el afidávit número 139,636 del Notario Público Frank M. González Acevedo, (en lo sucesivo, la "Garantía"), mediante la cual garantizó solidariamente el pago de todas las obligaciones presentes y futuras de la Demandada.

**A. <u>Suma de Dinero Adeudadas</u>**

15. La Parte Demandada incumplió con las obligaciones contraídas bajo el Contrato de Préstamo, la Garantía y los demás documentos de préstamo antes señalados al dejar de pagar las mensualidades vencidas.

16. Al 18 de agosto de 2022, la Parte Demandada adeudaba a PRRD, bajo el Contrato de Préstamo, el Pagaré Operacional, el Pagaré Hipotecario, la Garantía, y los demás documentos de préstamo, una suma no menor de $171,882.85 la cual se desglosa como sigue: (i) $122,816.61 por concepto de principal; más (ii) $34,252.34 por concepto de intereses acumulados y no pagados, cantidad que se continúa acumulando hasta su total y completo pago a razón de $23.55 diarios; más (iii) $1,313.90 por concepto de cargos por mora; más (iv) la suma agregada de $13,500.00 por concepto de costas, gastos y honorarios de abogado pactados expresamente por las partes, según se desprende del Pagaré Hipotecario y la Hipoteca.

17. Al presente, las cuantías antes descritas adeudadas por la Parte Demandada se encuentran vencidas, son líquidas e inmediatamente exigibles.

18. El 25 de febrero de 2020, PRRD envió a la Parte Demandada por correo certificado con acuse de recibo la Notificación de Incumplimiento.

19. Al presente, PRRD es el tenedor de buena fe y por endoso del Pagaré Operacional, el Allonge al Pagaré Operacional y el Pagaré Hipotecario.

20. Conforme surge de los documentos de préstamo, particularmente del Pagaré Operacional, el Allonge al Pagaré Operacional y el Pagaré Hipotecario que evidencian la deuda, PRRD es el titular de las facilidades de crédito objeto de cobro con derecho a exigir el cumplimiento de la totalidad de lo adeudado.[12]

A la luz de las determinaciones de hechos previamente citadas, el TPI razonó que PRRD demostró incontrovertiblemente, mediante prueba documental, fehaciente y admisible, que es el tenedor actual de los

---

[12] *Id.*, págs. 569-573.

pagarés que evidencian el préstamo concedido a la apelante y cuyo cobro y ejecución se solicita en este caso; que la propiedad gravada por la hipoteca consta inscrita en el Registro de la Propiedad; el perfeccionamiento del gravamen mobiliario a su favor; el incumplimiento de la apelante con sus obligaciones de pago; y que la deuda reclamada se encuentra vencida, líquida y exigible.[13]

En desacuerdo con dicha determinación, la apelante presentó una moción de reconsideración[14] a la que se opuso PRRD[15], que el TPI declaró No Ha Lugar[16].

Insatisfecha, la Sra. Carrasquillo presentó un recurso apelativo en el cual invoca la comisión de los siguientes errores:

> LA SENTENCIA SUMARIA FUE DICTADA SIN TOMAR EN CUENTA TODOS LOS VICIOS QUE INVALIDAN EL LOAN SALE AGREEMENT Y QUE ANULAN LA LEGITIMACIÓN ACTIVA DE LA PARTE DEMANDANTE-APELADA PR RECOVERY.
>
> LAS CANTIDADES RECLAMADAS POR PR RECOVERY Y RELACIONADAS EN LA SENTENCIA SUMARIA SON INCORRECTAS.[17]

Oportunamente, la apelada presentó su *Moción de Desestimación y/o Alegato en Oposición de la Parte Apelada*.[18]

Luego de revisar los escritos de las partes y los documentos que obran en autos, estamos en posición de resolver.

---

[13] *Id*., pág. 609.
[14] *Id*., págs. 612-626.
[15] *Id*., págs. 627-641.
[16] *Id*., pág. 642.
[17] La apelante invoca la comisión de dos señalamientos de error. En el segundo, alega que las cantidades reclamadas por PRRD y relacionadas en la sentencia sumaria son incorrectas. Sin embargo, no discute dicho señalamiento de error, por lo cual se tiene por no puesto. Véase, *Dávila Pollock v. R.F. Mortgage*, 182 DPR 86, 99 (2011); *Morán v. Martí*, 165 DPR 356, 366 (2005).
[18] Alegato de la apelada, págs. 1-23.

**-II-**

**A.**

La sentencia sumaria es un mecanismo procesal extraordinario y discrecional, que tiene el propósito de facilitar la solución justa y rápida de los litigios y casos civiles que no presenten controversias genuinas de hechos materiales y que, por lo tanto, no ameritan la celebración de una vista en su fondo.[19] Se trata de un mecanismo para aligerar la tramitación de un caso, cuando de los documentos que acompañan la solicitud surge que no existe disputa sobre algún hecho material y lo que procede es la aplicación del derecho.[20]

Al respecto, la Regla 36.1 de Procedimiento Civil dispone que un reclamante debe "presentar una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada".[21]

El Tribunal Supremo de Puerto Rico, en adelante TSPR, ha declarado enfáticamente que quien se opone a una solicitud de sentencia sumaria tiene que ceñirse a ciertas exigencias en lo atinente a los hechos.[22] Esto es, recae sobre el oponente la obligación de citar específicamente los párrafos, según enumerados en el escrito de sentencia sumaria, que entiende están en controversia, y para cada uno, detallar la evidencia

---

[19] *Aponte Valentín v. Pfizer Pharmaceuticals, LLC*, 208 DPR 263, 277-279 (2021); *Meléndez González v. M. Cuebas*, 193 DPR 100, 110-113 (2015); *Reyes Sánchez v. Eaton Electrical*, 189 DPR 586, 594 (2013); *Ramos Pérez v. Univisión de PR*, 178 DPR 200, 213 (2010).
[20] *Aponte Valentín v. Pfizer Pharmaceuticals, LLC*, *supra*, págs. 277-279; *Meléndez González v. M. Cuebas*, *supra*, págs. 110-113; *Ramos Pérez v. Univisión de P.R.*, *supra*, pág. 214.
[21] Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1.
[22] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 432 (2013).

admisible que fundamenta su alegación, y especificar la página o sección de la evidencia que contradice o refuta el hecho.[23] Además, el oponente puede someter hechos materiales adicionales que alegadamente no están en controversia y que impiden la solución sumaria del conflicto.[24] De así hacerlo, tiene la responsabilidad de, al igual que el proponente, enumerar los hechos en párrafos separados e indicar la pieza de evidencia que sostiene el hecho, con referencia específica a la parte de la evidencia que lo apoya.[25]

El TSPR reiteró en *Meléndez González, et als. v. M. Cuebas, Inc. y Bohío Int., Corp.*, 193 DPR 100, 122 (2015), que:

> La parte que se opone a una Moción de Sentencia Sumaria tiene el deber de presentar una Oposición a la solicitud presentada y de acuerdo con los requisitos de forma que exige la citada Regla 36 de Procedimiento Civil, traer a la atención del Tribunal la evidencia que demuestra que existen hechos materiales en controversia.[26]

Por otro lado, la Regla 36.3(c) de Procedimiento Civil dispone, que:

> [L]a parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica, como lo haya hecho la parte promovente. [De lo contrario], se dictará la sentencia sumaria en su contra si procede".[27]

Finalmente, en *Meléndez González, et als. v. M. Cuebas, Inc. y Bohío Int., Corp*, *supra*, el TSPR estableció el estándar específico que debe utilizar el Tribunal de Apelaciones para revisar una sentencia sumaria dictada por el Tribunal de Primera Instancia:

---

[23] *Id.*; 32 LPRA Ap. V, R. 36.3(b)(2).
[24] *SLG Zapata-Rivera v. J.F. Montalvo*, *supra*, pág. 432.
[25] *Id.*; Regla 36.3(b)(3) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(b)(3).
[26] *Meléndez González, et als. v. M. Cuebas, Inc. y Bohío Int., Corp.*, *supra,* pág. 122.
[27] Regla 36.3(c) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(c).

**Primero**, reafirmamos lo que establecimos en *Vera v. Dr. Bravo*, supra, a saber: el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria. En ese sentido, está regido por la Regla 36 de Procedimiento Civil, *supra*, y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario. Obviamente, el foro apelativo intermedio estará limitado en el sentido de que no puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia y no puede adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo. La revisión del Tribunal de Apelaciones es una *de novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor.

**Segundo***,* por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra*, y discutidos en *SLG Zapata-Rivera v. JF Montalvo*, supra.

**Tercero***,* en el caso de revisión de una Sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, *el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos*. Esta determinación puede hacerse en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.

**Cuarto***,* y por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.[28]

## B.

El Código Civil de 1930, vigente al momento de los hechos, define el contrato de préstamo en los siguientes términos:

Por el contrato de préstamo, una de las partes entrega a la otra, o alguna cosa no fungible para que use de ella por cierto tiempo y se la devuelva, en cuyo caso se llama comodato, o dinero u otra cosa fungible, con condición de volver [sic] otro tanto de la misma especie y calidad, en

---

[28] *Meléndez González, et als. v. M. Cuebas, Inc. y Bohío Int., Corp.*, *supra*, págs. 118-119. (Énfasis en el original).

cuyo caso conserva simplemente el nombre de préstamo.

El comodato es esencialmente gratuito.

El simple préstamo puede ser gratuito o con pacto de pagar interés.[29]

Por su parte, el TSPR ha definido el contrato de préstamo como:

> […] unilateral, por cuanto sólo produce obligaciones para una de las partes, que es el prestatario; traslativo de dominio, en el sentido de que, con la entrega de la posesión, se entrega también su título, ya que el prestatario recibe la cosa para gastarla, estando este obligado a devolver el género y; gratuito u oneroso, según se hayan pactado el pago de intereses o no.

> Toda vez que el contrato de préstamo es uno unilateral, por generar obligaciones a cargo del prestatario, éste estará obligado a entregar lo prestado –con sus intereses si se pactaron– una vez el término haya vencido.[30]

### C.

La Ley Núm. 208-1995, conocida como la *Ley de Transacciones Comerciales*, según enmendada[31], se adoptó con la finalidad de simplificar, clarificar y modernizar el derecho que rige las transacciones comerciales, uniformar el derecho entre las diversas jurisdicciones existentes y permitir la continua expansión de las prácticas comerciales.[32]

Ahora bien, un instrumento negociable, según definido por la mencionada disposición legal, es "una promesa incondicional de pagar una suma de dinero, pagaderos a la presentación o en fecha determinada, que no contiene ninguna otra promesa u orden".[33]

---

[29] Art. 1631 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 4511. (Derogado).
[30] *Torres, Torres v. Torres et al*, 179 DPR 481, 492 (2010). (Citas omitidas).
[31] Sec. 1-101 de la Ley Núm. 208-1995 (19 LPRA sec. 401 nota *et seq*.).
[32] Sec. 1-101 de la Ley Núm. 208-1995 (19 LPRA sec. 401); *Cruz Consulting v. El Legado*, et al., 191 DPR 499, 508 (2014); *COSSEC v. González López*, 179 DPR 793, 802 (2010).
[33] Sec. 2-102 de la Ley Núm. 208-1995 (19 LPRA sec. 504(a)).

Sobre lo que constituye una cesión de un instrumento negociable, el Capítulo 2 de la *Ley de Transacciones Comerciales*, *supra*, establece que esta ocurre "cuando se entrega por una persona que no sea su emisor con el propósito de darle a la persona que lo recibe el derecho a exigir el cumplimiento del instrumento".[34] "Sea esta una negociación o no, confiere al cesionario cualquier derecho del cedente a exigir el cumplimiento del instrumento, incluyendo cualquier derecho que tuviese como tenedor de buena fe ...".[35]

Por otro lado, la Sec. 2-206(a) y la Sec. 9-406(d) de la *Ley de Transacciones Comerciales* disponen lo siguiente:

Sección 2-206. — Endoso Restrictivo. (19 LPRA § 556)

(a) Un endoso que limita el pago a una persona en particular o que de otra forma prohíbe la cesión o negociación posterior del instrumento no es efectivo para evitar una cesión o negociación posterior del instrumento.[36]

[…]

Sección 9-406. — Relevo de un deudor de una cuenta; notificación de una cesión; identificación y evidencia de cesión; restricciones de una cesión de cuentas; papel financiero, pagos intangibles y pagares ineficaces. (19 LPRA § 2306)

[…]

(d) Disposiciones que restrinjan la cesión serán inefectivas. Excepto según de otro modo se dispone en la subsección (e) y la Sección 9-407, y sujeto a la subsección (h), una disposición en un acuerdo entre un deudor de una cuenta y un cedente o en un pagaré será inefectiva en la medida que:

(1) prohíba, restrinja, o requiera el consentimiento del deudor de una cuenta o persona obligada bajo un pagaré a la cesión o transferencia o a la creación, el embargo, la perfección o ejecución de una garantía mobiliaria sobre la cuenta, papel financiero, pago intangible o pagaré; o

---

[34] Sec. 2-203 de la Ley Núm. 208-1995 (19 LPRA sec. 553).
[35] *Id.*
[36] Sec. 2-206 de la Ley Núm. 208-1995 (19 LPRA Sec. 556).

(2) provea que la cesión o transferencia o la creación, embargo, perfección o ejecución del gravamen podrá resultar en un incumplimiento, derecho a reembolso, reclamación, defensa, terminación, derecho a terminar o remedio bajo la cuenta, papel financiero, pago intangible o pagaré.[37]

[…]

Finalmente, es pertinente destacar que la Cláusula 3.06 del Contrato de Préstamo lee como sigue:

Sección 3.06. Cesión de Colateral. El [BDE] tendrá el derecho absoluto de vender o ceder a cualquier otro Banco, fideicomiso o institución, toda o cualquier parte del Préstamo. Además, el [BDE] podrá constituir, a su opción, cualquier gravamen sobre cualquier colateral que garantice el pago del Préstamo para fines de levantar fondos para cumplir, si necesario, con los términos y condiciones de este Contrato.[38]

**D.**

El Art. 1118 del Código Civil de 1930, vigente al momento de los hechos, establece lo siguiente:

Artículo 1118. — Pago de buena fe al poseedor del crédito. (31 LPRA § 3168)

El pago hecho de buena fe al que estuviere en posesión del crédito liberará al deudor.[39]

En lo aquí pertinente, en *Rodríguez v. Banco Popular de Puerto Rico* 66 DPR 781, 784-85 (1946) el TSPR resolvió:

[s]erán casos de aplicación del art. 1164 y consiguiente eficacia del pago: el hecho al acreedor primitivo por un deudor que no conozca la cesión del crédito ni la incapacidad sobrevenida aquél; el que se verifique en favor de un cesionario, reconocido como tal, aunque después se declare la rescisión o nulidad de la transmisión, y el que se haga a los que, como herederos, posean la del acreedor. En estos casos, ni puede perjudicar al deudor que aquéllos a quienes pague sean luego vencidos en juicio, ni a los que en éste triunfen quedará otro medio que reclamar al que cobró indebidamente. (citas internas omitidas).

**E.**

En cuanto a la revisión y aprobación de contratos otorgados por entidades gubernamentales del Estado

---

[37] Sec. 9-406 de la Ley Núm. 208-1995 (19 LPRA Sec. 2306).
[38] Apéndice de la apelante, pág. 24.
[39] Art. 1118 del Código Civil de Puerto Rico de 1930, 31 LPRA Sec. 3168.

Libre Asociado de Puerto Rico, la *Puerto Rico Oversight, Management and Economic Stability Act* dispone en la Sec. 2144(b), lo siguiente:

[…]

(b)…

**(2) Authority to review certain contracts.** The Oversight Board may establish policies to require prior Oversight Board approval of certain contracts, including leases and contracts to a governmental entity or government-owned corporations rather than private enterprises that are proposed to be executed by the territorial government, to ensure such proposed contracts promote market competition and are not inconsistent with the approved Fiscal Plan.

**(5) Failure to comply.** If a contract, rule, regulation, or executive order fails to comply with policies established by the Oversight Board under this subsection, the Oversight Board may take such actions as it considers necessary to ensure that such contract, rule, executive order or regulation will not adversely affect the territorial government's compliance with the Fiscal Plan, including by preventing the execution or enforcement of the contract, rule, executive order or regulation. 48 U.S.C. §2 144. […][40]

**-III-**

En síntesis, la apelante impugna la capacidad de PRRD para cobrar las cantidades reclamadas por varias razones. Entiende que el Loan Sale Agreement es nulo porque fue el resultado de una transacción fraudulenta, que se está impugnando ante el TPI. Además, el documento en cuestión carece de plena eficacia jurídica porque no cumple con un requisito de forma, a saber, haber sido aprobado por la Junta de Control Fiscal, controversia que se está ventilando ante el Tribunal de Apelaciones Federal. En consecuencia, considera que la Sentencia apelada es prematura hasta que se resuelvan estas controversias en dichos foros. Sostiene, además, que el apelado no es legítimo tenedor por endoso del pagaré debido a que el endosatario no es un

---

[40] Apéndice de la apelante, pág. 603.

representante autorizado del BDE y la escritura en virtud de la cual se le concedían facultades para endosar es nula. Finalmente, alega que el apelado tampoco es un tenedor legítimo del pagaré debido a que no es un banco, fiduciario o institución financiera.

Por su parte, la apelada arguye que es la actual y legítima acreedora del crédito en controversia. Esto obedece a que los pagarés que representan la deuda fueron debidamente cedidos y endosados a su favor. A su entender, BDE no estaba impedido de ceder el préstamo a su favor. Ello responde a que la cláusula 3.06 del contrato de préstamo no restringe la facultad del cedente para vender el crédito en controversia. De todos modos, una restricción a la cesión sería contraria a la *Ley de Transacciones Comerciales*, *supra*, y a la ley orgánica del BDE. Además, la nulidad del contrato de cesión de crédito no afecta la condición de deudora de la apelante. En todo caso, el pago que realice extingue la obligación para cualquier acreedor. A esto hay que añadir que contrario alega la parte apelante, la validación del contrato de cesión de crédito entre BDE y PRRD, por parte de la Junta de Control Fiscal, no es un requisito de forma solemne para la eficacia del negocio jurídico.

Luego de revisar cuidadosamente los documentos que obran en autos, determinamos que PRRD cumplió cabalmente con los requisitos de forma de la Regla 36.1 de Procedimiento Civil, *supra*. Así, pues, presentó documentos y una declaración jurada en apoyo de sus alegaciones.[41] En cambio, la apelada incumplió crasamente con sus obligaciones bajo la Regla

---

[41] Apéndice de la apelante, págs. 1-116.

36.3(b)(2) de Procedimiento Civil, *supra*.[42] Esto es así porque no citó específicamente los párrafos según enumerados en la moción de sentencia sumaria que considera que están en controversia. Menos aún, para cada uno especificó la prueba admisible en que fundamenta su contención y la página o sección de la prueba que establece una controversia real sobre los hechos materiales pertinentes para adjudicar la reclamación. Por el contrario, su oposición consistió en una extensa argumentación de derecho sobre la nulidad del contrato de cesión de activos entre BDE y PRRD, y los documentos que acompañó con su escrito solo pretenden apoyar dicha contención jurídica. En ningún momento controvirtió los hechos y documentos presentados por la apelada.

Ante dicho escenario, corresponde determinar si el TPI aplicó correctamente el derecho y adelantamos que a nuestro entender sí lo hizo. Veamos.

Surge de los documentos que obran en autos que las partes suscribieron un contrato de préstamo[43] que está representado por un pagaré[44]. Que dicho contrato se enmendó[45] y la nueva obligación está reconocida por un pagaré[46]. Además, ambos pagarés se endosaron a favor de PRRD.[47] A esto hay que añadir que la obligación suscrita por la apelante está garantizada por un bien inmueble de su propiedad.[48] Como si lo anterior fuera poco, las partes suscribieron un gravamen mobiliario sobre

---

[42] *Id.*, págs. 117-250.
[43] Apéndice del apelada, págs. 17-38.
[44] *Id.*, págs. 39-40.
[45] *Id*, págs. 41-46.
[46] *Id*, pág. 53.
[47] *Id*, págs. 39-40 y 53-54.
[48] Apéndice de la apelante, págs. 44-45.

determinados bienes[49] y la apelante garantizó, solidariamente, el pago de sus obligaciones presentes y futuras mediante la suscripción de una garantía continua e ilimitada[50]. Finalmente, la apelante incumplió con las obligaciones contraídas y las gestiones de cobro realizadas resultaron infructuosas.[51] En consecuencia, la apelante adeuda las cantidades reconocidas en la sentencia, que son a su vez líquidas y exigibles.

Por otro lado, el ataque a la transacción de cesión de créditos entre BDE y PRRD es inconsecuente con relación al pleito ante nuestra consideración. De un examen cuidadoso del expediente se desprende que la apelante es parte de una obligación crediticia válida, garantizada hipotecariamente, que no ha cumplido. Esta obligación es vinculante ante el poseedor del crédito, en este caso PRRD. De modo que de cumplir la misma quedará liberada respecto a cualquier acreedor potencial. Si posteriormente resulta que BDE vence en el pleito, tal evento no afectará la posición jurídica de la Sra. Carrasquillo. Así pues, aquel tendrá que reclamar su acreencia de quien resultó vencido, es decir, PRRD.

Tampoco tiene razón la apelante cuando alega que la falta de validación del contrato de cesión de créditos por parte de la Junta de Control Fiscal constituye un requisito de forma solemne de dicho negocio jurídico. De la lectura de la Sec. 2144(b) de la *Puerto Rico Oversight Management and Economic Stability Act* no se desprende que dichas disposiciones

---

[49] Apéndice de la apelada, págs. 87-89.
[50] *Id*, págs. 90-93.
[51] *Id*, págs. 94-95.

impongan un requisito de forma indispensable para la eficacia del contrato en cuestión. En todo caso, como indicamos previamente, el ataque al contrato de cesión entre BDE y PRRD no afecta la validez del crédito que se reclama en el presente pleito.

Por otro lado, no nos convence el argumento de la apelante sobre la falta de validez de los endosos de los pagarés pertinentes a la transacción de autos. Así pues, la presunta nulidad de la escritura de la cual emana la autorización del representante del BDE para endosar los pagarés es una alegación conclusoria y especulativa. A nuestro entender, no constituye un fundamento válido para dejar sin efecto unas transacciones que de su faz cumplen cabalmente con las disposiciones de la *Ley de Transacciones Comerciales, supra*. Por el contrario, nuestra revisión de la cadena de endosos demuestra que la apelada es la poseedora del instrumento negociable en cuestión y en consecuencia ha recibido de su transferente el derecho a reclamar su cumplimiento.

Finalmente, contrario a la pretensión de la apelante, la Sec. 3.06 del Contrato de Préstamo no impone al BDE una restricción para ceder un crédito. No lo puede hacer porque esta sería contraria a la *Ley de Transacciones Comerciales*, *supra*. Por el contrario, la lectura de dicha disposición revela que el BDE ostenta una facultad absoluta para vender o ceder un crédito o cualquier parte de este. Es aquí donde debe recaer el énfasis de la interpretación.

**-IV-**

Por los fundamentos antes expuestos, se confirma la *Sentencia Sumaria* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La jueza Grana Martínez disiente con opinión escrita.


                              Lcda. Lilia M. Oquendo Solís
                        Secretaria del Tribunal de Apelaciones

| PR RECOVERY AND DEVELOPMENT JV, LLC.<br><br>Apelado<br><br>v.<br><br>REBECA I. CARRASQUILLO DE JESÚS T/C/C REBECA ISIS CARRASQUILLO DE JESÚS H/N/C CITRUS CAFÉ<br><br>Apelante | KLAN202300260 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Civil Núm.: CA2021CV03193<br><br>Sobre: Cobro de Dinero, Ejecución de Hipoteca y Ejecución de Gravamen Mobiliario |
|---|---|---|

Panel integrado por su presidente, el Juez Figueroa Cabán, la Jueza Grana Martínez y el Juez Rodríguez Flores

## VOTO DISIDENTE DE LA JUEZA GRANA MARTÍNEZ

El objetivo de la moción solicitando sentencia sumaria es facilitar la solución justa, rápida y económica de un caso. *Universal Insurance Company v. Estado Libre Asociado de Puerto Rico*, 2023 TSPR 24; *MAPFRE Preferred Risk Insurance Co. & Popular Auto v. Estado Libre Asociado*, 209 DPR 910, 946 (2022); *Meléndez González v. M. Cuebas*, 193 DPR 100, 109 (2015); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013); *Ramos Pérez v. Univisión*, 178 DPR 200, 212 (2010). Es el mecanismo procesal que provee nuestro ordenamiento para resolver controversias que no requieren la celebración de un juicio. *Segarra Rivera v. International Shipping Agency, Inc.*, 208 DPR 964, 979 (2022). Ahora bien, la sentencia sumaria solo procede cuando se demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada y siempre y cuando así proceda en derecho. 32 LPRA Ap. V., R. 36.3; *MAPFRE*

*Preferred Risk Insurance Co. & Popular Auto v. Estado Libre Asociado, supra.*

Al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia y ser consciente en todo momento de que su determinación puede conllevar que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón*, 204 DPR 20, 44 (2020); *Meléndez González v. M. Cuebas*, supra, pág. 138; *Mun. de Añasco v. ASES et al.*, 188 DPR 307, 327 (2013); *Jusino et als. v. Walgreens*, 155 DPR 560, 578 (2001); *Roig Com. Bank v. Rosario Cirino*, 126 DPR 613, 617 (1990).

Por otro lado, un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. O sea, es aquel que tomando en consideración el derecho aplicable, puede alterar la forma en que se resuelve un caso. *Meléndez González et al. v. M. Cuebas*, supra, pág. 110. Para mí, la legitimación activa de PR Recovery and Development JV, LLC, en adelante PRRDJV, para presentar la reclamación que hoy nos ocupa es un hecho en controversia que debe ser dilucidado mediante la celebración de un juicio en su fondo. No albergo duda que este es un hecho material capaz de derrotar la reclamación. Adviértase que la cesión del instrumento sea ésta una negociación o no, confiere al cesionario cualquier derecho del cedente a exigir el cumplimiento del instrumento, incluyendo cualquier derecho que tuviese como tenedor de buena fe, pero el cesionario no podrá adquirir los derechos de un tenedor de buena fe por una cesión directa o indirecta de un tenedor de buena fe, si el cesionario participó en un fraude o ilegalidad que afectó al instrumento. 19 LPRA sec. 553 (b).

La apelante sostiene que PRDRJV participó de un alegado fraude que vicia de ilegalidad la cesión del instrumento. Esto afirmando que la transacción de cesión es nula por haberse hecho

por una persona (endosatario) sin capacidad legal para representar al Banco de Desarrollo Económico. A mi entender esta controversia no es inconsecuente en el pleito que hoy nos ocupa. Me parece que dilucidar la legitimación activa de quien pretende el cobro del pagaré es un hecho material capaz de cambiar el curso de acción de la reclamación. Entiendo que es este precisamente el tipo de hecho que, por su trascendencia, requiere un juicio en su fondo, una vez se ha levantado una seria duda sobre la legitimación activa del reclamante. Tampoco creo que la alegación es una conclusoria y especulativa. Véase, como fuente persuasiva, las expresiones de un panel hermano en el KLAN202300013, en una controversia de la misma naturaleza a la que hoy nos ocupa y de la cual el apelado es parte. Citamos: "[l]a Sentencia apelada ignora que existe una controversia real y material sobre la titularidad de los créditos objeto de cobro". Específicamente, determinó que procedía dictar sentencia sumariamente **aun cuando el propio BDE informó al TPI que los créditos que la parte Apelada pretende cobrar no le pertenecen y son propiedad gubernamental del BDE.** Esto es un hecho esencial en controversia que no puede adjudicarse sumariamente, pues hay elementos de intención, que ameritan la celebración de un juicio plenario. En este caso, el factor de credibilidad es esencial y está en disputa, por lo que no procede la sentencia sumaria como mecanismo procesal de adjudicación.

Por otra parte, en una controversia de la misma naturaleza en la cual PRDJV fue parte reclamante sobre el cobro de cierto activo adquirido de la misma manera que el pagaré que hoy le reclama a la apelante, un panel hermano revocó la sentencia emitida por el foro primario mediante sentencia sumaria y desestimó la reclamación. Ello, concluyendo que había controversia sobre la legitimación activa de PRDJV al existir controversia sobre la venta del préstamo por el Banco de Desarrollo Económico. Véase, KLAN202300107.

En fin, el posible incumplimiento de la apelante con su obligación contractual no justifica que concedamos una solicitud de sentencia sumaria, cuando la legitimación activa del apelado está en controversia y es un hecho material para la reclamación. Después de todo, el tenedor de buena fe significa el tendedor de un instrumento si: (1) cuando fue emitido o negociado al tenedor, el instrumento no tenía evidencia aparente de falsificación o alteración ni era de tal forma irregular o incompleto como para que debiera cuestionarse su autenticidad; y (2) el tenedor tomó el instrumento (i) por valor, (ii) de buena fe, (iii) sin tener aviso de que el instrumento estuviese en mora o hubiese sido desatendido o de que existiese un incumplimiento no subsanado respecto al pago de otro instrumento emitido como parte de la misma serie, (iv) sin tener aviso de que el instrumento contiene una firma no autorizada o ha sido alterado, (v) sin tener aviso de la existencia de una reclamación contra el instrumento de las descritas en la Sección 2-306, y (vi) sin tener aviso de que una parte tenga una defensa o reclamación de resarcimiento de las descritas en la Sección 2-305(a).19 LPRA sec. 602 (a)(1) y (2). De hecho, el derecho a exigir el cumplimiento de la obligación contraída por una parte en un instrumento de pagarlo está sujeto a lo siguiente: (… (ii) coacción, falta de capacidad legal o ilegalidad de la transacción que, bajo otra ley, anula la obligación del deudor, …. 19 LPRA sec. 605 (a) (ii).

Resumiendo, no concibo el uso de la sentencia por la vía sumaria cuando hay controversia de un hecho material como el que ha planteado la parte apelante de falta de legitimación activa. Para mí es un hecho en controversia cuyo efecto en la reclamación puede ser tan material como para lograr la desestimación de esta, por lo que concluyo que debió haber sido dilucidado mediante un juicio en su fondo.

En San Juan, Puerto Rico a 30 de junio de 2023.




                        Grace M. Grana Martínez
                    Jueza del Tribunal de Apelaciones